

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBERS   13-14-00238-CV
## 13-14-00239-CV
## 13-14-00240-CR

### EX PARTE JERRY HARTFIELD

On appeal from the 130th District Court
of Matagorda County, Texas.

## NUMBER   13-14-00344-CR

### IN RE JERRY HARTFIELD

On Petition for Writ of Prohibition.

# OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Opinion by Justice Rodriguez**

In June 1977, a jury convicted appellant Jerry Hartfield of capital murder and sentenced him to death. On September 17, 1980, the Texas Court of Criminal Appeals reversed his conviction and ordered a new trial. *Hartfield v. State* (*Hartfield I*), 645 S.W.2d 436, 441 (Tex. Crim. App. 1980) (en banc) (reversing and remanding for a new trial on the basis that the State violated Hartfield's rights under the Sixth and Fourteenth Amendments by striking a juror for cause because of her reservations about the death penalty). The court of criminal appeals issued its mandate on March 4, 1983. On March 15, 1983, the Governor purportedly commuted Hartfield's sentence to life in prison, and the Texas Department of Criminal Justice maintained custody of Hartfield.

In 2006 and 2007, Hartfield asserted his speedy-trial claims through an article 11.07 post-conviction habeas petition.[1] *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2013 3d C.S.) (setting out the procedure for seeking post-conviction habeas relief in a noncapital felony case). When the state courts denied him relief, Hartfield filed a pro se federal habeas application in the United States District Court. The federal district court construed Hartfield's application as a pretrial habeas application under section 2241 and dismissed his speedy-trial claims, without prejudice, as unexhausted. *See Hartfield v. Thaler* (*Hartfield II*), 498 Fed. App'x. 440, 444 (5th Cir. 2012) (per curiam) (outlining the course of Hartfield's proceedings in federal court); *see also* 28 U.S.C.A. § 2241(c)(3) (West, Westlaw through P.L. 113–120). Both parties appealed that determination, and the Fifth Circuit certified the following question to the Texas Court of Criminal Appeals: "What was the status of the judgment of conviction

---

[1] We note that Hartfield's attempts to compel a new trial by filing petitions for writ of mandamus in state and federal courts during this time were unsuccessful.

2

after these events[, the issuance of the mandate and the commutation of the sentence,] occurred?" *Hartfield II*, 498 Fed. App'x. at 445. In 2013, after the court of criminal appeals answered "[t]he status of the judgment of conviction is that [Hartfield] is under no conviction or sentence," *see Hartfield v. Thaler* (*Hartfield III*), 403 S.W.3d 234, 240 (Tex. Crim. App. 2013), the Fifth Circuit affirmed the federal district court's judgment dismissing Hartfield's section 2241 application without prejudice. *Hartfield v. Stephens* (*Hartfield IV*), 536 Fed. App'x. 455, 456 (5th Cir. 2013).

On June 20, 2013, Hartfield again sought to enforce his constitutional right to a speedy trial in state court, this time by filling an article 11.08 pretrial habeas petition in each of three trial-court cause numbers, two civil and one criminal. *See* Tex. Code Crim. Proc. Ann. art. 11.08 (West, Westlaw through 2013 3d C.S.) (setting out the procedures for post-indictment, pre-conviction habeas petitions that challenge confinement). In the criminal cause, Hartfield also filed a motion to dismiss the 1976 indictment on speedy-trial grounds, which the trial court later denied. In April 2014, after a December evidentiary hearing on Hartfield's pretrial habeas petitions, the trial court filed its findings of fact and conclusions of law, concluding, in sum, the following: "In the final balance, this [trial] court concludes that the four *Barker* factors weighs [sic] against finding a speedy[-]trial violation." *See Barker v. Wingo*, 407 U.S. 514, 515 (1972) (setting out the following four-factor weighing and balancing test for assessing a claim that the speedy-trial right of the Sixth Amendment has been violation: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused). On April 17, 2014, the trial court entered an order denying Hartfield's petitions for writ of pretrial

3

habeas corpus and his motion to set aside the indictment. Hartfield appealed from the trial court's denial of his habeas petitions.

By a single issue on appeal, Hartfield contends that his constitutional right to a speedy trial has been violated. *See id.* (explaining that the right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and is applicable to the states through the Fourteenth Amendment). On May 14, 2014, this Court granted Hartfield's unopposed motion to give preferential treatment in this Court's scheduling. *See* TEX. R. APP. P. 43.6 ("The court of appeals may make any other appropriate order that the law and the nature of the case require."). With the issuance of this opinion, we have handled the cases expeditiously because of the significant issue involved. *See id.*; *see also* TEX. GOV'T CODE ANN. § 21.001(b) (West, Westlaw through 2013 3d C.S.) ("A court shall require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done.").

The trial court then set a trial on this matter for September 22, 2014. Hartfield responded by filing, in this Court, a petition for writ of prohibition and motion for emergency stay of the September trial setting, pending our resolution of this appeal. On June 25, 2014, we entered an order staying the trial court's proceedings.

Even though this case documents what appears to be the longest gap between indictment and trial in any speedy-trial case that has come before this Court or any other court, the uniqueness and fundamental differences that underlie Hartfield's speedy-trial claim, no matter how extraordinary, cannot establish its independent pretrial appealability. *See United States v. MacDonald*, 435 U.S. 850, 857 n.6 (1978). Because a pretrial

4

habeas proceeding is not an appropriate avenue for raising a speedy-trial claim, we vacate the portion of the trial court's order denying Hartfield's petitions for writ of habeas corpus, and we dismiss Hartfield's appeals. *See Ex parte Barnett*, 424 S.W.3d 809, 811 (Tex. App.—Waco 2014, no pet.) (dismissing the appeal because Barnett's pretrial habeas proceeding was not an appropriate avenue for raising his penalty-range challenge) (citing *Ex parte Doster*, 303 S.W.3d 720, 727 (Tex. Crim. App. 2010) (dismissing Doster's appeal after vacating the court of appeals' opinion that affirmed the trial court's denial of his writ of habeas corpus)). Having resolved the appeals, we dismiss the writ of prohibition as moot and lift the stay in the trial court's proceedings.

## I. BACKGROUND[2]

### A. Conviction, Appeal, and Purported Commutation of Sentence: 1977–1983

In 1977, a jury convicted Hartfield of the capital murder of Eunice Lowe and sentenced him to death. On direct appeal, Hartfield complained of a *Witherspoon* error—specifically that a member of the venire panel was improperly excluded from the jury. *See Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968) (holding "that sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty"). The court of criminal appeals agreed, and on September 17, 1980, it

---

[2] We have taken the procedural history from *Hartfield v. Thaler* (*Hartfield II*), 498 Fed. App'x. 440, 441–45 (5th Cir. 2012) (per curiam), the Fifth Circuit's opinion certifying the question of whether the prior judgment of conviction had been effectively vacated to the Texas Court of Criminal Appeals, from *Hartfield v. Thaler* (*Hartfield III*), 403 S.W.3d 234, 236–38 (Tex. Crim. App. 2013), the opinion by the Texas Court of Criminal Appeals on the certified question, and from *Hartfield v. Stephens* (*Hartfield IV*), 536 Fed. App'x. 455, 456 (5th Cir. 2013), the Fifth Circuit's opinion affirming the federal district court's judgment dismissing Hartfield's section 2241 application without prejudice.

5

reversed the judgment and remanded for a new trial.

On October 2, 1980, the State sought leave to file a motion for rehearing, urging the court of criminal appeals to reform the sentence to life imprisonment instead of remanding for a new trial. Alternatively, the State asked for a reasonable period of time to seek a commutation of Hartfield's sentence from the Governor. On November 26, 1980, the court of criminal appeals granted the motion for leave to file the motion for rehearing. However, on January 26, 1983, it denied the State's motion for rehearing, refusing the State's request to reform the sentence and holding that the fifteen-day period between the rendition of its decision and the date that the mandate issues was a reasonable time to seek commutation of Hartfield's sentence from the Governor. On March 1, 1983, the court of criminal appeals denied the State's motion for leave to file a second motion for rehearing. Mandate issued on March 4, 1983, and the trial court acknowledged receipt of the mandate on March 9, 1983.

On March 14, 1983, the Board of Pardons and Paroles sent a letter to the Governor recommending that he commute Hartfield's death sentence to life. The following day, March 15, 1983, the Governor signed proclamation number 83-04805 purportedly commuting Hartfield's sentence from death to life imprisonment. On March 23, 1983, the trial court returned a postcard to the court of criminal appeals stating that the execution of the mandate had been carried out. The card read "Executed on March 16, 1983 by Governor Mark White," with a notation stating, "Death Sentence commuted to Life by Governor." No further action was taken, and the Texas Department of Criminal Justice

6

maintained custody of Hartfield.[3]

## B. Proceedings in State and Federal Courts:   2006–2013

On November 14, 2006, Hartfield filed a pro se petition for writ of habeas corpus in state court, seeking relief under article 11.07 of the code of criminal procedure.   *See* TEX. CODE CRIM. PROC. ANN. art. 11.07.   On November 27, Hartfield supplemented his petition with a speedy-trial claim.   The district court forwarded Hartfield's petition and supplement to the Texas Court of Criminal Appeals.   Also, on January 4, 2007, Hartfield filed a pro se petition for writ of mandamus in the court of criminal appeals, seeking to compel a new trial.   On January 31, 2007, without written order, the court of criminal appeals denied Hartfield's habeas petition and his petition for writ of mandamus.   On April 22, 2007, Hartfield filed a second pro se petition for writ of habeas corpus, which the court of criminal appeals dismissed on May 30, 2007, as a subsequent petition under article 11.07, section 4(a)–(c) of the Texas Code of Criminal Procedure.   *See id.*

Hartfield then filed a pro se application for writ of habeas corpus in the United States District Court for the Southern District of Texas, raising two claims:   (1) that his right to due process had been denied by the trial court's failure to retry him; and (2) that he was being detained by an illegal sentence.   The district court referred the application to a magistrate judge, who, on October 3, 2008, appointed a federal public defender as counsel for Hartfield.   The magistrate judge later concluded, in relevant part, that Hartfield was not in custody pursuant to a judgment of a state court and that his claim

---

[3] The trial court set out, among others, the following finding of fact:   "Hartfield remained incarcerated in the Texas Department of Criminal Justice, Institutional Division, from the date the mandate issued until June 28, 2013, when the Matagorda County [S]heriff [D]eputies executed the bench warrant by the 130th [D]istrict [C]ourt."

7

was actually a pre-conviction habeas petition. However, because Hartfield was confined in the Eastern District of Texas, the case was transferred there.

A magistrate judge for the Eastern District likewise construed Hartfield's application as a pretrial habeas application under section 2241, recommended that Hartfield's application be dismissed without prejudice, and concluded that Hartfield had failed to exhaust state-law remedies. The federal district court adopted the magistrate judge's recommendations, holding that (1) Hartfield was not in custody pursuant to the judgment of a state court; and (2) Hartfield's claims were not properly before it because, having taken the procedurally improper step of directly asking the court of criminal appeals for relief, Hartfield had yet to properly seek relief from the state trial court. The district court required Hartfield to proceed in state court with his claim that the indictment should be dismissed because a new trial would violate his Sixth Amendment right to a speedy trial. On April 29, 2011, the federal district court dismissed Hartfield's application without prejudice.

Both parties appealed to the Fifth Circuit, the State challenging the holding that Hartfield was not in custody pursuant to a judgment, and Hartfield appealing from the requirement that he exhaust his speedy-trial claim. On November 28, 2012, finding no controlling state precedent regarding the status of Hartfield's conviction and sentence, the federal court of appeals certified the following question to the Texas Court of Criminal Appeals: Whether the judgment of conviction had been effectively vacated prior to the 1983 commutation.

On June 12, 2013, the court of criminal appeals answered the Fifth Circuit's

certified question, determining that no judgment of conviction existed after mandate issued on March 4, 1983. The court of criminal appeals reasoned that with no conviction and no sentence to reduce, the governor's March 15, 1983 commutation order had no effect. The court of criminal appeals also agreed that Hartfield had not exhausted his state remedies. The Fifth Circuit then affirmed the federal district court's order dismissing Hartfield's speedy-trial claim without prejudice, as unexhausted.

## C. Proceedings in State Court: 2013 to Present

On June 20, 2013, Hartfield filed three petitions for writ of habeas corpus pursuant to article 11.08.[4] *See id.* art. 11.08. On September 4, 2014, the State filed a motion to dismiss Hartfield's petitions, arguing that his speedy-trial claim was not cognizable in such an article 11.08 petition. The trial court denied the State's motion on November 27, 2013. On December 17, 2013, Hartfield filed a motion in the trial court to set aside his

---

[4] Hartfield filed a petition for writ of habeas corpus in each of the following: (1) Civil Cause Number 13-E-0324 (appellate cause number 13-14-00238-CV) in the Matagorda County District Court; (2) Civil Cause Number 13-E-0325 (13-14-00239-CV) in the Matagorda County District Court; and (3) Criminal Cause Number 7794 in the 329th District Court of Wharton County, Texas. On July 29, 2013, Cause Number 7794 was transferred to Criminal Cause Number 13-0334 (13-14-00240-CR) in the Matagorda County District Court.

During a preliminary hearing below, Hartfield informed the trial court that, to avoid redundancy, he would pursue his petition only in Criminal Cause Number 13-0334. However, the petitions in Civil Cause Numbers 13-E-0324 and 13-E-0325 were neither withdrawn nor dismissed, and the trial court's order denied Hartfield's petitions for writ of habeas corpus filed in those cause numbers as well as in Criminal Cause Number 13-0334.

On appeal, Hartfield has advised this Court that, out of an abundance of caution, he filed three notices of appeal, two civil and one criminal. Upon receipt, we docketed the three notices separately, two as civil appeals and one as a criminal appeal. Now, the State respectfully suggests that we have not properly docketed the two civil appeals because our decision will ultimately be appealable to the Texas Court of Criminal Appeals for an article 11.08 determination. We share each party's concern. Yet this Court does not have the ability to re-characterize an appeal filed from a trial-court cause number that an appellant prudently specifies. Following this appeal, we propose that the trial court and the parties take any necessary action to resolve this matter.

9

indictment in the criminal case, Cause Number 13-0334.

On December 19, 2013, the trial court heard Hartfield's habeas petitions and, on December 27, 2013, ordered additional briefing. Both parties complied. Because no order was forthcoming, on April 7, 2014, Hartfield filed a petition for writ of mandamus in this Court. We dismissed the petition as moot when the trial court entered its order on Hartfield's petitions for writ of habeas corpus as discussed below. *In re Hartfield*, No. 13-14-00210-CR, 2014 WL 1514171, at *1 (Tex. App.—Corpus Christi April 15, 2014, orig. proceeding) (per curiam) (mem. op., not designated for publication).

On April 17, 2014, the trial court entered an order denying Hartfield relief on his three pretrial habeas petitions. In its April 17, 2014 order, the trial court also denied Hartfield's motion to set aside the indictment. The trial court later filed thirty-five pages of findings of fact and conclusions of law addressing Hartfield's speedy-trial claim and concluding that the *Barker* factors weighed against a speedy-trial violation.[5]

On April 25, 2014, Hartfield appealed the trial court's order denying his pretrial

---

[5] As part of its conclusions of law, the trial court provided the following chart summarizing its analysis of the *Barker* factors.

| *Barker v. Wingo* Factor | Finding | Weighs Against the | Degree |
|---|---|---|---|
| Length of the Delay | Over 30 years from mandate to instant motion | State | Triggers *Barker* review |
| Reason for Delay | State's Negligence | State | Not as heavily as bad faith or intentional delay |
| Defendant's assertion of the right to speedy trial | Acquiescence for over 23 years; no filings directly in the trial court | Hartfield | Heavily |
| Prejudice to the Accused | Over 30 years pre-trial incarceration; presumed prejudice, extenuated | State | Slight |

habeas petitions. Hartfield did not appeal the trial court's order denying his motion to set aside the indictment, as that avenue of appeal, as will be discussed later in this opinion, is available only post-conviction.

On June 24, 2014, Hartfield filed a petition for writ of prohibition and motion for emergency stay in this Court. In his petition, Hartfield informed us that the trial court had scheduled the trial in this matter for September 22, 2014. He alleged that the trial court had done so in an attempt to "circumvent this Court's ability to determine whether Hartfield's right to a speedy trial was violated." *See Gano v. Villarreal*, 745 S.W.2d 586, 587 (Tex. App.—Corpus Christi 1988, orig. proceeding) (setting out that a writ of prohibition may issue to prevent, among other things, a lower court from interfering with a higher court's determination of a case pending on appeal). Hartfield argued that he was entitled to have the trial stayed. We granted an emergency stay and requested a response, which the State filed on June 19, 2014. We then stayed the trial court proceedings, pending resolution of the appeals.[6]

## II. ISSUES PRESENTED

On appeal, Hartfield brings the following issue: "Whether the Sixth Amendment right to a speedy trial is violated when the State of Texas confines a man to the penitentiary for more than thirty years following a decision by the State's highest court to provide that man with a new trial." By a number of sub-issues, Hartfield challenges relevant findings of fact and conclusions of law that the trial court entered following its denial of Hartfield's petitions for a pretrial writ of habeas corpus. In sum, Hartfield claims

---

[6] We consider Hartfield's appeals and his petition for writ of prohibition in this consolidated opinion.

that the trial court should have found the first *Barker* factor weighed heavily in favor of Hartfield, the third factor weighed slightly in his favor or slightly against him, and the fourth factor weighed heavily in his favor, leading to the conclusion that Hartfield's right to a speedy trial has been violated. *See Barker*, 407 U.S. at 533; *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .").

In response, the State asserts that Hartfield's speedy-trial complaint is not cognizable in a petition for a pretrial writ of habeas corpus. Alternatively, the State contends that, should we conclude that Hartfield's complaint is cognizable; his *Barker-*factor arguments are without merit. Because the threshold determination of whether Hartfield's claim is even cognizable in a pretrial habeas petition is dispositive of all appeals, we address it first.[7] *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) ("[W]hether a claim is even cognizable on pretrial habeas is a threshold issue that should be addressed before the merits of the claim may be resolved."); *see also* TEX. R. APP. P. 47.1.

### III. DISCUSSION

## A. Applicable Law

> The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.

---

[7] Because the facts and issues are the same in each case, we address them in one opinion.

TEX. CODE CRIM. PROC. ANN. art. 11.01 (West, Westlaw through 2013 3d C.S.). Article

11.08 provides for a pretrial writ of habeas corpus:

> If a person is confined after indictment on a charge of felony, he may apply
> to the judge of the court in which he is indicted; or if there be no judge within
> the district, then to the judge of any district whose residence is nearest to
> the court house of the county in which the applicant is held in custody.

*Id.* art. 11.08; *see id* art. 11.07 (providing for a post-conviction writ of habeas corpus).

A pretrial habeas, followed by an interlocutory appeal, is an "extraordinary

remedy." *Ex parte Ellis*, 309 S.W.3d at 79. Because it is an extraordinary remedy,

"appellate courts have been careful to ensure that a pretrial writ is not misused to secure

pretrial appellate review of matters that should not be put before appellate courts at the

pretrial stage." *Ex parte Ragston*, 402 S.W.3d 472, 475 (Tex. App.—Houston [14th Dist.]

2013), *aff'd sub nom. Ragston v. State*, 424 S.W.3d 49 (Tex. Crim. App. 2014) (citing *Ex*

*parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). Neither a trial court nor an

appellate court should entertain a petition for writ of habeas corpus when there is an

adequate remedy by appeal. *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App.

2001). "If a non-cognizable claim is resolved on the merits in a pretrial habeas appeal,

then the pretrial writ has been misused, and the State can appropriately petition [the court

of criminal appeals] to correct such misuse." *Ex parte Ellis*, 309 S.W.3d at 79.

In *Ex parte Weise*, the Texas Court of Criminal Appeals succinctly summarized its

holdings on the types of claims that are cognizable in a pretrial writ of habeas corpus:

> [A]n applicant may use pretrial writs to assert his or her constitutional
> protections with respect to double jeopardy and bail. We reasoned that
> these protections would be effectively undermined if these issues were not
> cognizable. Conversely, we have held that an applicant may not use a
> pretrial writ to assert his or her constitutional rights to a speedy trial,

13

challenge a denial of a pretrial motion to suppress, or make a collateral estoppel claim that does not allege a double jeopardy violation. These issues are better addressed by a post-conviction appeal.

55 S.W.3d at 619–20 (footnotes omitted). In other words, an alleged violation of a defendant's Sixth Amendment right to a speedy trial cannot be raised by pretrial habeas because a ruling on such an issue is not entitled to interlocutory review. *MacDonald*, 435 U.S. at 863; *Ex parte Doster*, 303 S.W.3d at 724; *Ex parte Weise*, 55 S.W.3d at 620; *Ex parte Graves*, 271 S.W.3d 801, 807 (Tex. App.—Waco 2008, pet. ref'd) (denying appellant's pretrial writ of habeas corpus speedy-trial claim that "his due process rights [would be] violated [if he were] re-tried fourteen years after the original trial, when the delay was a result of intentional prosecutorial misconduct," on the basis that his claim was not cognizable). As the United States Supreme Court observed:

> There perhaps is some superficial attraction in the argument that the right to a speedy trial . . . must be vindicated before trial in order to insure that no nonspeedy trial is ever held. Both doctrinally and pragmatically, however, this argument fails. Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends the constitutional guarantee of a speedy trial. If . . . an accused [is deprived] of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

*MacDonald*, 435 U.S. at 860–61.

Instead, the "remedy [for an alleged violation of one's constitutional right to a speedy trial] is a pretrial motion to set aside the charging instrument on speedy-trial grounds." *Ex parte Graves*, 271 S.W.3d at 807. And while the denial of relief on a pretrial writ of habeas corpus in certain instances may be appealed immediately, *Ex parte*

14

*Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005) (per curiam); *see Ex parte Weise*, 55 S.W.3d at 619–20, the denial of a speedy-trial pretrial motion to quash an indictment may be appealed only after conviction and sentencing. *See Ex parte Smith*, 178 S.W.3d at 801; *see also MacDonald*, 435 U.S. at 860–61. Finally, in *MacDonald*, the United States Supreme Court stated that "'[a]ppeal rights cannot depend on the facts of a particular case.' The factual circumstances that underlie a speedy trial claim, however 'extraordinary,' cannot establish its independent appealability prior to trial." 435 U.S. at 857 n.6 (quoting *Carroll v. United States*, 354 U.S. 394, 405 (1957)).

## B. Standard of Review

We review a trial court's decision to grant or deny a writ of habeas corpus for abuse of discretion. *See Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *see also Ex parte Cedillo*, No. 13-09-00219-CR, 2010 WL 2136607, *2 (Tex. App.—Corpus Christi May 27, 2010, no pet.) (mem. op., not designated for publication). However, if the resolution turns on an application of legal standards, we review the determination de novo. *See Sandifer v. State*, 233 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)). Here, the State asserts that the trial court misapplied the law when, in this pretrial habeas proceeding, it reviewed the merits of Hartfield's non-cognizable speedy-trial claim. So, in this case, we review the trial court's denial of Hartfield's pretrial habeas petitions de novo. *See id.*

## C. Discussion

### 1. Motion to Dismiss the Indictment

15

In the present case, Hartfield filed a pretrial motion to dismiss his indictment, which the trial court denied. Based on the case law set out above, over which we lack that authority to overturn, *see State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006) ("As an intermediate court, we lack the authority to overturn the court of criminal appeals."), *aff'd sub nom. State v. Colyandro*, 233 S.W.3d 870, 885 (Tex. Crim. App. 2007), because this issue is better addressed by a post-trial appeal, *see MacDonald*, 435 U.S. at 863; *Ex parte Weise*, 55 S.W.3d at 620, Hartfield has an adequate remedy at law by raising his speedy-trial claim on direct appeal of an underlying murder conviction, if any, on the retrial of his case. *See Ex parte Graves,* 271 S.W.3d at 807; *see also* TEX. CODE CRIM. PROC. ANN. art. 27.03 (West, Westlaw through 2013 3d C.S.) (governing the grounds on which a motion to set aside an indictment may be sought); *id.* art. 28.061 (West, Westlaw through 2013 3d C.S.) ("If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant."); *id.* art. 44.01(a)(1) (West, Westlaw through 2013 3d C.S.) (providing that the State may appeal when the trial court grants a motion to dismiss an indictment). In other words, Hartfield's post-conviction appeal of the trial court's denial of his motion to dismiss his indictment is his avenue to assert his speedy-trial claim, not the drastic remedy of pretrial habeas relief. *See Ex parte Doster*, 303 S.W.3d at 724; *Ex parte Weise*, 55 S.W.3d at 620; *Ex parte Jones*, 449 S.W.2d 59, 60 (Tex. Crim. App. 1970). Were we to entertain Hartfield's petitions and resolve his speedy-trial claim on the merits in this pretrial habeas appeal, we would be misusing the pretrial writ. *See Ex parte Ellis*, 309 S.W.3d at 79; *see also Ex parte Weise*, 55 S.W.3d at 619. For if it is

16

determined on direct appeal that Hartfield has been deprived of his right to a speedy trial, that loss, by definition, occurred before trial and proceeding with trial would not have caused or compounded any deprivation which had already been suffered. *See MacDonald*, 435 U.S. at 860–61; *Ex parte Lamar*, 184 S.W.3d 322, 323 (Tex. App.—Fort Worth 2005, pet. ref'd) (op. on reh'g).

## 2. Is a Speedy-Trial Claim Cognizable Through an Article 11.08 Pretrial Habeas Petition?

Nevertheless, Hartfield argues that "[w]hether it intended to overrule precedent or merely recognized that Mr. Hartfield's case is unique, the [Texas] Court of Criminal Appeals clearly indicated in its June 12, 2013 opinion that filing [a petition] under [a]rticle 11.08 was one of the two means by which Mr. Hartfield could raise his speedy[-]trial claim." *See Hartfield III*, 403 S.W.3d at 240.

### a. Did the Court of Criminal Appeals Overturn Precedent?

By the following language from *Hartfield III*, "Alternatively, Petitioner could have filed an application under Article 11.08," Hartfield argues that the Texas Court of Criminal Appeals overturned its own precedent. *See id.* The State characterizes this language as, among other things, "a single, fleeting sentence" and asserts that if this sentence is "placed back into context, [Hartfield's] interpretation fails." We are persuaded by the State's arguments because, were we to follow Hartfield's reasoning, we would have to conclude that the court of criminal appeals intended to overturn decades of its own precedent with this one sentence. And we decline to do so.

"Finding no controlling precedent under Texas law," the Fifth Circuit certified "the following determinative question to the Texas Court of Criminal Appeals: What was the

17

status of the judgment of conviction after these events occurred?" *Id.* at 236. The

court of criminal appeals provided the following answer to the certified question:

> The March 4, 1983 mandate issued by this Court reversed the judgment of conviction, and no court has entered any order thereafter to alter that reversal. Because some penalty must be assessed for the authority of commutation to be exercised and Petitioner's death sentence was erased by our mandate, the governor's proclamation of commutation was a nullity. The status of the judgment of conviction is that Petitioner is under no conviction or sentence.

*Id.* at 240. Beyond this answer to the certified question, the court of criminal appeals

ended its opinion with the following section titled "State Remedies for Pretrial Claim":

> When Petitioner filed a state application for writ of habeas corpus, he filed it under Code of Criminal Procedure Article 11.07. Because Article 11.07 relates only to post-conviction applications for writ of habeas corpus and there was no judgment of conviction against Petitioner, this was not the proper procedure, and we denied his application. He also filed an application for leave to file a petition for mandamus asking us to compel a new trial. This too was the improper procedure because our reversal of his conviction left him in the same position as if he had never had a trial. If his motion to set aside the indictment for failure to provide a speedy trial was sustained, then Petitioner would be discharged under Article 28.061 of the Texas Code of Criminal Procedure. Alternatively, Petitioner could have filed an application under Article 11.08. Therefore, the United States District Court for the Eastern District is correct that Petitioner has not exhausted state remedies. Because our denial of Petitioner's applications for writs of habeas corpus and mandamus were based on his failure to follow the proper procedure, it is not a forgone conclusion that Petitioner's state claims will be denied and exhaustion of state remedies is not futile.

*Id.* at 239–40.

Although the federal exhaustion requirement is absent from the statutory language

of section 2241(c)(3), generally, a pretrial, federal habeas petitioner must first present a

constitutional claim to the state courts before the federal courts can pass on it. *See, e.g.,*

*Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 489–92 (1973) (determining

that exhaustion is necessary under section 2241 as well as section 2254); *compare* 28 U.S.C.A. § 2241(C)(3) (West, Westlaw through P.L. 113–120) (providing for pre-trial habeas proceedings absent an exhaustion requirement in the statutory language) *with* 28 U.S.C.A. § 2254(b)(1)(A)–(B) (West, Westlaw through P.L. 113–120) (providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," that "there is an absence of available State corrective process" or that "circumstances exist that render such process ineffective to protect the rights of the applicant").  Perhaps in an effort to ensure that the Fifth Circuit did not waive the federal exhaustion requirement and address Hartfield's speedy-trial claim de novo, the court of criminal appeals suggested the existence of a pretrial remedy to inform the state courts of his speedy-trial claim, that remedy being a pretrial motion to set aside the indictment for failure to provide a speedy trial.  *See Hartfield III*, 403 S.W.3d at 240.  As the court of criminal appeals explained, if this pretrial motion were sustained, Hartfield would be discharged under article 28.061 of the Texas Code of Criminal Procedure.  *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 28.061.  If denied, Hartfield would have the opportunity to challenge the ruling post-conviction on direct appeal.  *See Ex parte Doster*, 303 S.W.3d at 724; *Ex parte Weise*, 55 S.W.3d at 620*.*  Identifying a second pretrial remedy, the court of criminal appeals also set out that Hartfield "could have filed an application under [a]rticle 11.08."  *Hartfield III,* 403 S.W.3d at 240.  Importantly, its reference to article 11.08 did not set out that Hartfield could have filed a petition under article 11.08 *to advance his speedy-trial claim*.  *See id.*  The court

19

of criminal appeals omitted that specific language, perhaps to indicate that Hartfield could have used article 11.08 to advance his contention that he was in prison despite the fact that he was under no conviction or sentence. *See id.* In that regard, Hartfield would not have exhausted his state court remedies. *See id.* So, as the State submits, we conclude that the court of criminal appeals' article 11.08 reference is narrower than Hartfield contends. And we cannot conclude that the Texas Court of Criminal Appeals, without more, overturned precedent with a single sentence.

### b. Is Hartfield's Claim an Exception to the General Rule?

Hartfield also asserts that his claim is cognizable in a pretrial writ of habeas corpus because it is so unique and fundamentally different from every other speedy-trial case. He contends that, by its language, the court of criminal appeals recognized that the following concerns that ordinarily make a pretrial petition an inappropriate vehicle by which to raise a speedy-trial claim are not present in this case: (1) the degree to which a defendant's ability to present a defense has been prejudiced by the delay prior to the trial is typically difficult to determine; and (2) allowing immediate appeal on speedy-trial issues would frustrate the purposes of the Speedy Trial Clause. *See MacDonald*, 435 U.S. at 859–62; *see also Barker*, 407 U.S. at 530, 533. We do not agree that the court of criminal appeals recognized that Hartfield's case was so "out of the ordinary," that he could apply for pretrial habeas corpus relief on his speedy-trial claim.

As set out above, "[a]ppeal rights cannot depend on the facts of a particular case." *MacDonald*, 435 U.S. at 857 n.6; *Carroll*, 354 U.S. at 405. And, as noted earlier, even though this case documents what appears to be the longest gap between indictment and

trial in any speedy-trial case that has come before this Court or any other court, the uniqueness and fundamental differences that underlie Hartfield's speedy-trial claim, no matter how extraordinary, cannot establish its independent pretrial appealability. *See MacDonald*, 435 U.S. at 857 n.6.

### 3. Summary

We cannot conclude that the court of criminal appeals has overruled its precedent or created an exception to the general rule under the facts of this case, and we are obliged to conform our opinions to those of the court of criminal appeals. *See DeLay*, 208 S.W.3d at 607. Being bound by the court of criminal appeals precedent on this subject, *see Moses*, 590 S.W.2d at 470, we reject Hartfield's arguments in support of his contention that he may raise his speedy-trial claim in a pretrial writ of habeas corpus.

Based on our de novo review, *see Sandifer*, 233 S.W.3d at 2 (citing *Guzman*, 955 S.W.2d at 89), Hartfield's speedy-trial claim is not cognizable by a pretrial petition for a writ of habeas corpus. Hartfield has an adequate remedy at law; therefore, he is not eligible for pretrial habeas relief. And the trial court erred in determining the merits of Hartfield's speedy-trial claim in this pretrial habeas proceeding.

Having concluded that Hartfield's speedy-trial claim is not cognizable in such an article 11.08 pretrial habeas petition, we do not reach Hartfield's contentions regarding the *Barker* factors. *See* TEX. R. APP. P. 47.1. We overrule Hartfield's sole issue.

### IV. CONCLUSION

Accordingly, we vacate the portion of the trial court's order that denied Hartfield's petitions for writ of habeas corpus under article 11.08 in Cause Numbers 13-E-0324, 13-

21

E-0325, and 13-0334, and we dismiss Hartfield's appeals. *See Ex parte* Barnett, 424 S.W.3d at 811 (citing Ex *parte Doster*, 303 S.W.3d at 727; *see also* TEX. R. APP. P. 43.2(f).

We further dismiss Hartfield's petition for writ of prohibition, which complains of a trial setting prior to the resolution of his appeals, as moot and lift the stay in the trial court.

NELDA V. RODRIGUEZ
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 14th
day of August, 2014.

22